FILED
SEP 21 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY AG DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| **LEROY NELLIS,**<br>Plaintiff,<br>*v.*<br>**WILLIAMSON COUNTY, TEXAS;**<br>LARRY R. DAVIS, individually;<br>JOSHUA D. RANSOM, individually;<br>RACHAEL C. LENTZ, individually;<br>LUKE CADRIEL, individually;<br>RONALD W. BARNETT, individually;<br>JAMIE P. BROOKS, individually;<br>BRUCE E. YOUNG, JR., individually;<br>DIANNA Y. O'BRIEN, individually;<br>CHRISTOPHER T. WATTS, individually;<br>JORGE ALVARADO, individually;<br>RICKEY K. LADET, individually;<br>AARON LI, individually;<br>MATHEW E. SMITH, individually;<br>MATTHEW IVIE, individually;<br>REBECCA M. RODRIGUEZ, individually;<br>WILLIAM T. CALLAHAN, individually;<br>KARG, first name unknown, individually; and<br>JOHN DOES 1–10, individually,<br>Defendants. | **Civil Action No.**<br>1:26CV02592 XR<br>**ORIGINAL COMPLAINT**<br>**42 U.S.C. § 1983**<br>**Americans with Disabilities Act**<br>**Rehabilitation Act**<br>**JURY TRIAL DEMANDED** |

Plaintiff LeRoy Nellis files this Original Complaint and alleges as follows:

## I. INTRODUCTION

1. This is an action under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment, a limited First Amendment claim tied to one restraint incident, and claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, while Plaintiff

was a pretrial detainee at the Williamson County Jail in Georgetown, Texas. He was released on or about July 15, 2025.

2. This Complaint asserts only incidents on or after September 21, 2024. Plaintiff files on September 21, 2026. Earlier events are background of notice only. If a record dates a pleaded act before September 21, 2024, that act is withdrawn as an independent claim.

3. Each individual is sued for that person's own conduct. The County is sued only under Monell and as a public entity under the ADA and Rehabilitation Act. HIPAA is not a claim. Unlicensed practice is not a claim. Plaintiff does not ask this civil court to decide a criminal sexual-offense charge.

4. Plaintiff spent this period in restrictive housing, away from other inmates. He never saw another prisoner's medical care. He does not invent a second inmate.

## II. JURISDICTION AND VENUE

5. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. This is not a Texas Tort Claims Act case. The six-month notice in Tex. Civ. Prac. & Rem. Code § 101.101 does not apply to § 1983. Felder v. Casey, 487 U.S. 131 (1988).

6. Venue is proper in the Austin Division under 28 U.S.C. § 1391(b).

## III. PARTIES

7. Plaintiff is an adult resident of Texas. At every time relevant here he was a pretrial detainee. He had serious medical conditions including type 2 diabetes, hypertension, vision loss, and neuropathic pain. After Defendant Brooks issued him white shoes that marked him as handicapped, jail staff had notice that he was a person with a disability.

8. Williamson County, Texas operates the Jail. It may be served through the Williamson County Judge, 710 Main Street, Suite 101, Georgetown, Texas 78626.

9. Larry R. Davis, Joshua D. Ransom, Rachael C. Lentz, Luke Cadriel, Jamie P. Brooks, and Ronald W. Barnett worked in the jail medical operation. Barnett was a medical sergeant. Brooks issued Plaintiff white shoes that symbolized he was handicapped. Each is sued in his or her individual capacity under § 1983.

10. Bruce E. Young, Jr. was a sergeant who worked classification and the housing areas. Young classified Plaintiff and placed him into restrictive housing and into the non-ADA cells described below, including cells with bunks elevated approximately five feet off the ground. Dianna Y. O'Brien was a sergeant who worked the housing areas and approved or continued Plaintiff's restrictive-housing placement during the limitations period.

11. Christopher T. Watts was a two-star commander. Plaintiff's parents called him directly about the isolation and the medical problems. Sally Hernandez, Sheriff of Travis County, gave Plaintiff's father Watts's direct number. After several calls Watts came to Plaintiff and told him to have his parents stop calling. Hernandez is a witness, not a defendant.

12. Jorge Alvarado and Rickey K. Ladet used force on Plaintiff in early December 2024, before the transfer. They handcuffed him in the cell and assaulted him from behind when the door opened. In the dayroom they twisted the cuffs while his hands were in the door slot to have the cuffs taken off. That twisting injured his right hand, and the injury continues. Aaron Li used force on December 23, 2024, when he moved Plaintiff from B9R1 to B7R4.

13. Mathew E. Smith videotaped the February 2025 restraint-chair incident. The chair and the assault that put Plaintiff in it happened because he would not give them his Bible. He watched them throw away the Bible and his prayer rug. Those items were still missing from property when he was released. Matthew Ivie was the EMT who checked Plaintiff in the chair, saw his hands turning blue, and left them that way about forty-five minutes. About six officers were present. The others are Does. Darrin O. Ivy is a different person from Matthew Ivie.

14. Rebecca M. Rodriguez and William T. Callahan, who identified themselves as sergeants, were present each time Plaintiff was recorded naked in or around C14R8 in January 2025. One of them had the camera. Karg, first name unknown, held Plaintiff during two of those recordings.

15. John Does 1–10 include the other officers at the chair, the EMT names from the January 2025 pill refusals, officers who kept Plaintiff in non-ADA cells and denied showers after disability notice, and any other person who personally used force or denied care or accommodation. Each is sued only for that person's own conduct. Substitution will be under Rule 15. Plaintiff understands that substituting a name for a Doe may not relate back.

16. Each individual acted under color of state law. Contract medical staff did too. West v. Atkins, 487 U.S. 42 (1988). Service may be made at the Williamson County Jail, 508 South Rock Street, Georgetown, Texas 78626, or as Rule 4 allows.

## IV. EXHAUSTION

17. Plaintiff submitted medical requests and grievances, more than once, about medication, pain, housing, showers, and access. He files after release and is not a "prisoner" under 42 U.S.C. § 1997e. Ross v. Blake, 578 U.S. 632 (2016). The grievance files are in Defendants' possession.

## V. FACTS

### *A. Medical care*

18. Plaintiff had type 2 diabetes and hypertension and reported vision loss, neuropathic pain, weakness, swelling, bloody urine, and severe kidney pain. His indicated diabetes treatment was oral medication, not insulin. At intake, before September 21, 2024, EMTs including David A. Miller and Paige P. Altobelli forced insulin on him by drawing it from the vial and handing him the needle. Other EMTs used that same method and also would not show the vial. Those intake acts are not independent claims in this case. They are background that Davis and Ransom later continued the same practice inside the limitations period.

19. He asked, out loud and in writing, for those pills, for glucose checks, and for a doctor. Staff refused medications — not one drug.

20. In December 2024 Ransom gave Plaintiff insulin after Plaintiff said he was not supposed to be on it. The method was the same one the EMTs used: Ransom drew the insulin from the vial and handed Plaintiff the needle. Ransom hid the glucose reading and the dose and would not let Plaintiff see the vial he drew from. Plaintiff went too low. He used a sugary drink (Kool-Aid) to keep from crashing. Handing him the syringe did not make it voluntary. He was a restrained detainee. He had said no.

21. In January 2025 Davis did the same thing. He presented the substance as insulin, drew it from the vial, and handed Plaintiff the needle after Plaintiff said he was not supposed to be on insulin. Davis hid the reading and the dose and would not let Plaintiff see the vial he drew from. This was not a slip of a needle and it was not informed consent. Plaintiff does not guess a cc amount. The MAR, glucometer log, and vial inventory will show the drug, units, and time.

22. In December 2024 Lentz delayed a prescribed medication about nineteen hours while Plaintiff was in severe pain and was asking for it. The MAR timestamps will show the gap.

23. In January 2025 Cadriel was the first person to refuse the pills. Plaintiff asked because he was being overdosed on insulin. Cadriel refused and wrote him up for asking. Brooks and EMTs in the medical unit also refused the type 2 pills that month.

24. A kidney-pain and bloody-urine episode in 2024 is not pleaded as a standalone claim. After a psychiatric examination, officers put Plaintiff in a suicide smock and took his property. Ronald W. Barnett, then a medical sergeant, told Plaintiff's mother that Plaintiff was suicidal and that this was why they took his things and put him in the smock. Barnett also refused to give the doctors' names, citing privacy. If that exam and smock placement occurred before September 21, 2024, they are background of notice only.

25. From about March 25, 2025 through July 11, 2025, required glucose checks were not done. From about May 25, 2025 through July 11, 2025, prescribed diabetic care was interrupted. Ronald W. Barnett was a medical sergeant during that period. He had authority over that medical unit and notice of the missed monitoring.

26. Those delays caused pain, fear of going low, continued kidney and urinary symptoms, and worsening vision and nerve complaints as Plaintiff himself experienced them. He does not offer a medical-expert causation opinion in this pleading.

***B. Disability notice, white shoes, elevated bunks, and non-ADA cells***

27. Jamie P. Brooks issued Plaintiff white shoes that symbolized he was handicapped. That issuance put the Jail on notice that Plaintiff was a person with a disability who needed accessible housing and related accommodations.

28. Bruce E. Young, Jr. classified Plaintiff and put him into restrictive housing and into cells that were not ADA-compliant, including B9R1, I13, and C14L5. Those cells lacked accessible features required for a person the Jail itself had marked as handicapped. Young made the classification and placement decisions that put Plaintiff in those cells.

29. In those cells the bunks were elevated approximately five feet off the ground. A bunk that high is not accessible for a person with the disabilities the Jail had already marked. Plaintiff had to climb into and out of a bunk roughly five feet above the floor while in restrictive housing and after disability notice.

30. While in B9R1 and I13, Plaintiff was denied a shower for about three weeks. He asked for showers. Staff did not provide them. He remained in restrictive housing without access to a working, accessible shower for that stretch.

31. C14L5 was non-ADA after Brooks had already issued the white shoes. Young classified and placed Plaintiff there. Keeping a marked disabled detainee in a non-compliant cell with elevated bunks after that notice was deliberate.

32. Plaintiff needed accessible housing, a reachable bunk, and basic hygiene access because of his disability and medical conditions. Defendants knew or should have known the cells were non-compliant and that denying showers for three weeks and forcing use of a five-foot-high bunk created a substantial risk of harm. Classification files, housing logs, and the white-shoe issuance will show Young's placement decisions and notice.

*C. December 23, 2024 force — B7R4 transfer*

33. In early December 2024, before the B7R4 transfer, Alvarado and Ladet assaulted Plaintiff in a repeating way. They handcuffed him inside the cell. When the cell door opened they hit him from behind. In the dayroom, when he put his hands in the door slot to have the cuffs removed, they twisted the cuffs. That twisting injured his right hand. He still has that injury. He was restrained. He was not striking anyone or trying to run.

34. On December 23, 2024, about six guards — one of them a female officer with a video camera — moved Plaintiff from B9R1 to B7R4. As Li was putting him into the B7R4 cell, Li punched him in the back of the head and kept twisting or tightening the handcuffs. Alvarado and Ladet's earlier-December assaults are separate from Li's December 23 assault. The female officer's camera should have recorded December 23.

*D. January 2025 recordings — C14R8*

35. In January 2025, in or around unit C14R8, Callahan and Rodriguez caused or took part in recording Plaintiff while he was naked. He did not consent. They identified themselves as sergeants. One of the two had the camera. This happened more than once.

36. Karg held Plaintiff during two of those recordings. Plaintiff was not a threat that required being held for a camera. He had no pens or paper in restrictive housing and could not keep a written log of the exact days. The housing log, roster, and recordings will supply the days.

37. The recordings and restraint caused humiliation, fear, and dignitary injury. Plaintiff describes the constitutional wrong. He does not ask this Court to enter a criminal conviction.

*E. February 2025 restraint chair*

38. In February 2025 Plaintiff would not give them his Bible. They assaulted him and put him in a restraint chair for that reason. About six guards were there. Smith videotaped it. Ivie was the EMT.

39. Plaintiff was already controlled. He did not pose a threat that required hours in the chair. He had no clock he could see. His best estimate of the total time in the chair is about two and one-half hours.

40. Ivie came to check him. Plaintiff's hands were turning blue. Ivie left them that way for about forty-five minutes. An EMT who sees cyanotic hands and walks off is not providing care.

41. Plaintiff watched them throw away his Bible and his prayer rug. Those items were still not in his property when he left the Jail on or about July 15, 2025. The assault, the chair, the filming, the ignored blue hands, and the destruction of the Bible and prayer rug are one incident. The other officers are Does. The restraint log, Ivie's note, property log, and Smith's video will show the day and the participants.

*F. Restrictive housing and command notice*

42. Plaintiff spent about 326 days in restrictive housing, up to 23.5 hours a day, including a substantial period from December 2024 through July 15, 2025. When he was let out it was only to the dayroom. He did not see the outside for about a year. Damages are sought only for the timely part.

43. He did not get adequate notice or a real periodic review. Bruce E. Young, Jr. classified him and put him in that housing. Sergeant Dianna Y. O'Brien worked the housing areas and saw the isolation continue. Classification files and duty rosters will show Young's classification decisions and what was signed.

44. Watts knew because Plaintiff's parents called him and told him the isolation and the medical problems. After several calls Watts came to the unit and told Plaintiff to have them stop calling. He did not fix the cell or the care. Phone logs and Sheriff Hernandez will confirm the calls.

*G. County notice and records*

45. Plaintiff cannot describe how other inmates were treated. He never saw them. What he can describe is the same failures happening to him over months, the grievances he filed from solitary — all classified unsubstantiated — and a two-star commander who answered parent calls by telling him to silence his family.

46. Plaintiff sent Public Information Act requests to the Williamson County Sheriff's Office and the Williamson County District Attorney's Office and, in those submissions, asked that evidence be preserved. On information and belief the County's own files — MAR, glucometer logs, grievances marked unsubstantiated, classification reviews signed by Young, video, housing logs for B9R1, I13, and C14L5, and the medical contract — will show policymakers had notice and kept the same practices. If the Court holds that one isolated detainee cannot state a Monell custom, Count VII may be dismissed without affecting Counts I through VI.

47. Defendants must preserve video (including the December 23 B9R1-to-B7R4 camera), metadata, MARs, glucometer logs, vial inventory, restraint-chair logs, Ivie's medical notes, duty rosters, classification reviews and Young's classification decisions, housing and shower logs for B9R1, I13, and C14L5, grievance files marked unsubstantiated, Public Information Act files, and phone logs for the parent calls to Watts.

**VI. LEGAL FRAMEWORK**

48. Plaintiff was a pretrial detainee. Force is judged by objective reasonableness. Kingsley v. Hendrickson, 576 U.S. 389 (2015). Episodic medical care in this Circuit still requires subjective deliberate indifference. Farmer v. Brennan, 511 U.S. 825 (1994); Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996) (en banc). Long isolation is judged as punishment under Bell v. Wolfish, 441 U.S. 520 (1979).

49. Title II of the ADA and Section 504 of the Rehabilitation Act require a public entity to provide reasonable accommodations and accessible facilities to qualified individuals with disabilities in its custody. 42 U.S.C. § 12132; 29 U.S.C. § 794. Deliberate indifference to known disability-related needs can support liability.

50. No one is liable only because of a job title. Iqbal, 556 U.S. 662 (2009); Monell, 436 U.S. 658 (1978). This case does not attack a conviction. Heck v. Humphrey, 512 U.S. 477 (1994).

**VII. CLAIMS**

**COUNT I — Fourteenth Amendment medical care**

*Davis, Ransom, Lentz, Cadriel, Brooks, Barnett, Ivie (blue hands), and Does who personally denied care*

51. Plaintiff incorporates paragraphs 1–50 only as they state facts for this Count.

52. Plaintiff had serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976).

53. Each Defendant named in this Count actually knew of a substantial risk and disregarded it. Farmer, 511 U.S. at 837; Hare, 74 F.3d at 647–50. That includes forced insulin after objection, hidden readings and hidden vials, the nineteen-hour delay, refused pills, Barnett's smock explanation and refusal to name the doctors, missed glucose checks on Barnett's medical watch, and Ivie leaving cyanotic hands in the chair.

54. Forced insulin is also unwanted treatment. Cruzan v. Director, Missouri Department of Health, 497 U.S. 261 (1990); Washington v. Harper, 494 U.S. 210 (1990).

**COUNT II — Fourteenth Amendment excessive force**

*Alvarado, Ladet, and Li — December 2024, including December 23, 2024*

55. Plaintiff incorporates paragraphs 1–50 only as they state facts for this Count.

56. Each named officer purposely used force that was objectively unreasonable on a handcuffed, controlled man. Kingsley, 576 U.S. at 396–97. Alvarado and Ladet did it from behind at the cell door and by twisting cuffs in the dayroom slot. Li did it on December 23 while putting Plaintiff into B7R4. The cuff-twisting injured Plaintiff's right hand, and that injury continues. A lasting injury is not required, Hudson v. McMillian, 503 U.S. 1 (1992), but here there is one.

**COUNT III — Restraint chair, ignored injury, and Bible**

*Smith, Ivie, and Does present in February 2025*

57. Plaintiff incorporates paragraphs 1–50 only as they state facts for this Count.

58. Hours in a restraint chair on a man who was already controlled, while an EMT watched his hands turn blue and walked away, was objectively unreasonable force and punishment. Kingsley; Bell, 441 U.S. at 535–39.

59. Taking the Bible and prayer rug, throwing them away, assaulting Plaintiff, and putting him in the chair because he would not give up the Bible is pleaded as part of that force and, alternatively, as interference with religious exercise and retaliation. The items were still missing at release. If the Court rejects the religion theory, the assault, the chair, and the blue-hands facts still stand.

**COUNT IV — Naked recording and restraint**

*Callahan, Rodriguez, and Karg — January 2025, C14R8*

60. Plaintiff incorporates paragraphs 1–50 only as they state facts for this Count.

61. Recording a naked detainee without consent, more than once, while sergeants ran a camera and Karg held him on two of those occasions, had no legitimate medical or security purpose proportionate to that intrusion. It was punitive under Bell and an unreasonable restraint under Kingsley.

62. Plaintiff does not ask the Court to decide a criminal charge.

**COUNT V — Restrictive housing and command notice**

*Young (classification and placement), O'Brien, and Watts*

63. Plaintiff incorporates paragraphs 1–50 only as they state facts for this Count.

64. A pretrial detainee may not be punished by months of isolation without real review. Bell, 441 U.S. at 535–39. Young classified Plaintiff and put him into that housing. O'Brien worked the unit and saw it continue. Watts had actual knowledge from the parent calls and from telling Plaintiff to stop them. That is each person's own conduct, not respondeat superior.

**COUNT VI — Non-ADA housing, elevated bunks, denied showers, and disability accommodation**

*Brooks (notice by white shoes); Young (classified and placed Plaintiff in B9R1, I13, and C14L5); O'Brien and Does who continued the placement and denied showers; Williamson County under ADA/Rehab Act*

65. Plaintiff incorporates paragraphs 1–50 only as they state facts for this Count.

66. Plaintiff is a qualified individual with a disability. Brooks issued white shoes that marked him as handicapped. The Jail therefore had actual notice of his disability.

67. After that notice, Young classified Plaintiff and put him into non-ADA-compliant cells including B9R1, I13, and C14L5. In those cells the bunks were elevated approximately five feet off the ground. Plaintiff was also denied showers for about three weeks in B9R1 and I13. Those placements, the inaccessible bunk height, and the shower denial were not reasonable accommodations. They excluded him from programs, services, and activities of the Jail on the basis of disability and subjected him to discrimination under Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

68. As to individuals under § 1983: after disability notice, Young's classification and placement of Plaintiff into inaccessible cells with five-foot elevated bunks, and the continued denial of basic hygiene for weeks, showed deliberate indifference to a substantial risk of serious harm related to his known medical and disability needs.

69. Williamson County is the public entity that operated the Jail and is liable under the ADA and Rehabilitation Act for the inaccessible housing, elevated bunks, and denied showers after notice.

**COUNT VII — Municipal liability**

*Williamson County only — Monell*

70. Plaintiff incorporates paragraphs 1–50 only as they state facts for this Count.

71. The County is not liable because it employed people. Monell, 436 U.S. at 691. It is liable only for a policy, a custom, a policymaker decision, or a deliberately indifferent failure to train that was the moving force. Canton v. Harris, 489 U.S. 378 (1989); Connick v. Thompson, 563 U.S. 51 (2011).

72. Plaintiff alleges notice from his own months of the same failures, his grievances from solitary, command-level calls that produced an order to silence the family rather than care, and Young's continued placement of him in non-ADA housing with elevated bunks after the Jail itself marked him disabled with white shoes. He does not allege that he watched this happen to other inmates. If that is not enough for Monell, dismiss this Count only.

## VIII. DAMAGES AND PRAYER

73. Plaintiff suffered pain, fear, humiliation, medical symptoms, loss of hygiene, difficulty accessing the bunk, and dignitary injury.

74. He seeks compensatory damages; punitive damages against individuals only, Smith v. Wade, 461 U.S. 30 (1983); no punitive damages against the County, City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981); costs and fees if later authorized; preservation of the records in paragraph 47; leave to amend names from those records; and other lawful relief.

75. Plaintiff demands a jury.

## IX. CERTIFICATE REGARDING GENERATIVE AI

76. This Complaint was drafted with the assistance of generative artificial intelligence tools. I used those tools to organize my facts, check citation names, and format the paper. I did not let the tools invent events.

77. I have read every paragraph. The facts are mine. I am responsible for this paper under Fed. R. Civ. P. 11 whether or not AI helped draft it. I have not disclosed anyone else's confidential information to those tools.

Respectfully submitted this 21st day of September, 2026.

**LeRoy Nellis**
Plaintiff Pro Se
4845 Twin Valley
Austin, Texas 78731
512.450.1533
NellisLeRoy@proton.me

**VERIFICATION**

I, LeRoy Nellis, declare under penalty of perjury under 28 U.S.C. § 1746 that I have read this Complaint and that the facts in it are true and correct to the best of my knowledge, information, and belief. I had no clock in restrictive housing. Times in the chair and the shower denial are estimates. Bunk height is an approximate measurement from the floor. Legal citations are not sworn facts.

LeRoy Nellis
Date: September 21, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

LeRoy Nellis v. Williamson County, Texas, et al.

Civil Action No. ________________

## CERTIFICATE OF GENERATIVE ARTIFICIAL INTELLIGENCE USAGE

This Original Complaint was drafted with the assistance of generative artificial intelligence tools.

I am the Plaintiff. I am not a lawyer. I used those tools to organize my facts, check citation names, and format the pleading. I did not let the tools invent events. Every factual statement is mine.

I hereby certify that I have independently verified the accuracy of the factual assertions in the Complaint from my own knowledge. I have read every paragraph. Legal citations are contentions of law. I understand Rule 11 of the Federal Rules of Civil Procedure applies to me as a pro se filer and that I am responsible for this paper whether or not AI helped draft it.

I further certify that the use of generative artificial intelligence has not resulted in the disclosure of confidential or privileged information to any unauthorized party beyond my own case facts.

The Austin Division does not publish a required AI form. I file this certificate so the Court has a clear record of assistance and of my Rule 11 review.

Respectfully submitted this 21st day of September, 2026.

_______________________________

**LeRoy Nellis**
Plaintiff Pro Se
4845 Twin Valley Dr
512.450.1533 / NellisLeRoy@proton.me